## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| HARSHAD P. DESAI, | MEMORANDUM DECISION AND ORDER |
| Plaintiff, | |
| v. | |
| PANGUITCH MAIN STREET, INC. and PANGUITCH CITY CORPORATION, | Case No. 2:04cv691 |
| Defendant. | District Judge Dale A. Kimball |

Before the court is Panguitch Main Street, Inc. ("Main Street") and Panguitch City

Corporation's ("City") (collectively, "Defendants") motion for summary judgment.[1]  The court

has carefully reviewed the motion, memoranda, and other materials submitted by the parties and

has considered the law and facts relevant to the motion.  Now being fully advised, the court

enters the following Memorandum Decision and Order.

As an initial matter, the court notes that Harshad P. Desai ("Plaintiff") is proceeding pro

se in this case.  Accordingly, the court will construe his pleadings and other submissions

liberally.  *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).  At the

same time, however, it is not "the proper function of the district court to assume the role of

advocate for the pro se litigant."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

---

[1] *See* docket no. 153.

# I.  BACKGROUND

## A.  Facts[2]

In July 2003, Plaintiff, a Hindu immigrant from India residing in Panguitch, Utah, applied for an open position as the manager of Main Street ("Main Street Manager").  As stated in the advertisement for the position, potential applicants must "be self-motivated, have a background in business, [possess] good writing and computer skills, [and they] must work well with the public."[3]  Main Street received three applications, including Plaintiff's.  On August 24, 2003, Plaintiff was interviewed by members of the Main Street board.  On September 10, 2003, Plaintiff was informed that another applicant was selected.  The hiring committee determined that Sal Luca was "the most prepared and capable of assuming the responsibilities of Main Street Manager."[4]

On September 25, 2003, Plaintiff filed a complaint against Defendants for employment discrimination with the Utah Antidiscrimination and Labor Division ("UALD").  The UALD transferred Plaintiff's administrative case to the Equal Employment Opportunity Commission ("EEOC").  Plaintiff received a Notice of Right to Sue from the EEOC dated April 27, 2004, and

---

[2] The facts are taken from Defendants' memorandum in support of their motion for summary judgment, as well as the original and amended complaints.  Under the local rules, all material facts "set forth with particularity in the statement of the movant will be deemed admitted for the purpose of summary judgment, unless specifically controverted by the statement of [material facts] of the opposing. *See* DUCivR 56-1(c).  In this case, Plaintiff failed to specifically controvert Defendants' facts and, as such, Defendants' facts are deemed admitted.

[3] Docket no. 154, Exhibit A, at 2.

[4] *Id.*

on July 28, 2004,[5] Plaintiff filed the instant case in this court against Defendants.  Plaintiff alleges that Defendants failed to hire him on the basis of his race, color, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964.  *See* 42 U.S.C. § 2000e-2(a)(1).

In July 2004, Mr. Luca left the position, and Main Street again advertised for a new Main Street Manager.  Prospective applicants were to have a "diverse background" through education and/or experience in at least one of the following areas: "Historic Preservation, Planning, Economic Development, Volunteer Management, Non-Profit Management and Small Business Recruitment/Development."[6]  Applicants were also required to "be Self-Motivated and Work Well with Diverse Personalities."[7]  Plaintiff and four other individuals applied for the Main Street Manager position.  While the hiring committee considered Plaintiff for the position along with the other applicants, Plaintiff was not interviewed again because he had been interviewed less than a year earlier.  By letter dated July 29, 2004, Main Street informed Plaintiff that he was not selected for the position.  The hiring committee hired an out-of-state applicant from California, Jess Johnson, for the position because of her background and experience in education,

---

[5] The court notes that while the Clerk of Court received and lodged the original complaint on July 28, 2004, Plaintiff's motion to proceed in forma pauperis was not ruled upon until August 20, 2004.  As such, Plaintiff's complaint was not filed in the docket until September 9, 2004.  However, the court will treat the filing date as July 28, 2004.  *See, e.g.*, *Jarrett v. U.S. Sprint Comm. Co.*, 22 F.3d 256, 259 (10th Cir. 1994).

[6] Docket no. 154, Exhibit A, at 3.

[7] *Id.*

3

entrepreneurial development, recruitment and small business management, non-profit organizations, and grant writing.

Plaintiff again filed claims for employment discrimination against Defendants with the UALD and the EEOC.  Plaintiff was issued Notices of Right to Sue by (1) the EEOC on August 12, 2009, for Main Street; and (2) the United States Department of Justice on December 9, 2009, for the City.  And, on April 4, 2011, Plaintiff filed an amended complaint.[8]

### B.  Procedural History

As noted above, Plaintiff filed his original complaint against Defendants on July 28, 2004.[9]  On December 16, 2004, the court granted Plaintiff's motion to continue the matter until March 7, 2005.[10]  The original scheduling order was issued on April 11, 2005.[11]  From that date until November 1, 2006, Plaintiff attempted to conduct discovery on his claims, and the court ruled on several discovery motions.[12]  On January 31, 2007, the court granted Plaintiff's motion to stay the case until April 1, 2007, so that Plaintiff could travel to India to care for his ailing mother.[13]

---

[8] *See* docket no. 119.  The court notes that Plaintiff's amended complaint was notarized on and dated March 24, 2011.

[9] *See* docket no. 3.

[10] *See* docket no. 14.

[11] *See* docket no. 18.

[12] *See* docket nos. 21, 22, 23, 26, 29, 30, 31, 32, 39, 40, 41, 51, 52, 54, 55, 56, and 57.

[13] *See* docket no. 58.

On August 7, 2007, the court issued an order to show cause[14] that directed Plaintiff to inform the court of the status of the case, to which Plaintiff replied August 17, 2007.[15]  In that response, Plaintiff indicated that there were two additional administrative cases pending against Defendants that were nearly identical to the original complaint.  The court granted Plaintiff's motion to stay the case until October 1, 2008, as Plaintiff expected his administrative cases to be completed by then.[16]

Believing the administrative process was nearly complete, the court lifted the stay on December 10, 2008, and instructed the parties to attempt to stipulate to an amended scheduling order.[17]  On December 30, 2008, the court issued an amended scheduling order that set a three-day jury trial to begin in November 2009.[18]  However, because the administrative cases were not yet final, the court again vacated the scheduling order and stayed the case pending the exhaustion of Plaintiff's administrative remedies.[19]  In that order, the court instructed Plaintiff to file a motion to lift the stay and amend the complaint upon receiving both notices of his right to sue.

---

[14] *See* docket no. 59.

[15] *See* docket no. 60.

[16] *See* docket no. 62.

[17] *See* docket no. 65.

[18] *See* docket no. 68.

[19] *See* docket no. 85.

On June 7, 2010, the court ruled on numerous motions filed by Plaintiff.[20]  In that order, the court lifted the stay and noted that Plaintiff had provided right to sue letters issued by (1) the EEOC dated August 12, 2009, and (2) the United States Department of Justice dated December 9, 2009.  The court informed Plaintiff that he could seek leave to amend his complaint but that he must do so by July 16, 2010.  Between July 6 and July 15, Plaintiff filed four motions for leave to amend his complaint.[21]  The court granted Plaintiff's motions and instructed Plaintiff to file an amended complaint no later than March 31, 2011, that set forth every cause of action Plaintiff believed he had against Defendants.[22]

On April 4, 2011, Plaintiff filed an amended complaint, although it was dated and notarized on March 24, 2011.[23]  Plaintiff filed several motions and other documents between April 4 and November 30, 2011, as well as another motion to continue all proceedings through March 1, 2012.[24]  On December 14, 2011, the court ruled on all pending motions and set a status conference for March 9, 2012.[25]  At the hearing, the court ordered limited additional discovery

---

[20] *See* docket no. 105.

[21] *See* docket nos. 106, 107, 109, and 112.

[22] *See* docket no. 116.

[23] *See* docket no. 119.

[24] *See* docket nos. 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, and 133.

[25] *See* docket no. 134.

and indicated that a final scheduling order would be forthcoming.[26]  On March 12, 2012, the

court issued the final scheduling order.[27]

## II.  DISCUSSION

### A.  Summary Judgment Standard

Defendants filed a motion for summary judgment under rule 56 of the Federal Rules of

Civil Procedure.  *See* Fed. R. Civ. P. 56(c).  "Summary judgment is appropriate if the record

shows that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  *True v. United States*, 190 F.3d 1165, 1171 (10th Cir. 1999)

(quotations and citation omitted).  Under this standard, "[a] fact is material if under the

substantive law it could have an effect on the outcome of the lawsuit."  *Adams v. Am. Guar. &*

*Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (quotations and citation omitted).  "An issue

is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence

presented.'"  *Id*. (alteration in original) (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220

F.3d 1184, 1190 (10th Cir. 2000)).  In reviewing a motion for summary judgment, the court

"view[s] the factual record and draw[s] any reasonable inferences therefrom in the light most

favorable to the nonmoving party."  *Id*.

At the summary judgment stage, while evidence need not be presented in a form that

would be admissible at trial, "the content or substance of the evidence must be admissible."

---

[26] *See* docket no. 136.

[27] *See* docket no. 138.

*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quotations and citation omitted).  Plaintiff "must still identify sufficient evidence requiring submission to the jury." *Turner v. Public Servs. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009) (quotations and citation omitted).  "[He] cannot avoid summary judgment merely by presenting a scintilla of evidence to support [his] claim; [he] must proffer facts such that a reasonable jury could find in [his] favor." *Id.*

### B.  Defendants' Statute of Limitations Argument

As an initial matter, Defendants argue that Plaintiff's claims related to the 2004 position fail as a matter of law because he did not file suit within 90 days of receiving notices of his right to sue.  Specifically, Defendants contend that Plaintiff should have filed his amended complaint(s) by November 12, 2009, and/or March 9, 2010, and because he did not file until April 4, 2011, the claims related to the 2004 position should be dismissed.

"Compliance with the filing requirements of Title VII is not a jurisdictional prerequisite, rather it is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling." *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995). While the court recognizes that Plaintiff did not file his amended complaint within the 90-day period, it concludes that equitable tolling is undoubtedly appropriate in this case. *See Carlile v. S. Routt Sch.* Dist., 652 F.2d 981, 986 (10th Cir. 1981) ("Equitable tolling might be appropriate . . . where a plaintiff has been lulled into inaction by . . . the courts."); *see also Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).  In several orders noted above, the court indicated its willingness to permit Plaintiff to amend his complaint to include claims related to the 2004

position upon exhaustion of his administrative remedies.  Within days of receiving the notices of his right to sue, Plaintiff filed pleadings requesting that the court consolidate the administrative cases into his federal lawsuit,[28] as well as a motion to lift the final stay.[29]  In the order granting Plaintiff's motion to lift the stay, the court instructed Plaintiff to file a motion for leave to amend his complaint by July 16, 2010,[30] and Plaintiff did so on July 6, 8, and 15, 2010.[31]  In another order, the court instructed Plaintiff to file his amended complaint by March 31, 2011.[32]  Plaintiff did so on April 4, 2011.[33]

While Plaintiff's amended complaint was technically filed four days late, the court again notes that the amended complaint was notarized on and dated March 24, 2011.  In light of the fact that Plaintiff is proceeding pro se, he has been steadfastly diligent in attempting to comply with the court's orders, as well as the Federal Rules of Civil Procedure.  Accordingly, the court concludes that granting summary judgment as to Plaintiff's claims related to the 2004 position on a technicality would be inappropriate.  As such, the court will examine the claims related to both the 2003 and 2004 positions under Title VII.

---

[28] *See* docket nos. 83 and 91.

[29] *See* docket no. 93.

[30] *See* docket no. 105.

[31] *See* docket nos. 106, 107, 109 and 112.

[32] *See* docket no. 116.

[33] *See* docket no. 119.

### C. Title VII Analysis

In his amended complaint, Plaintiff alleges that by failing to hire him, Defendants violated Title VII on the basis of his race, color, religion, and national origin. *See* 42 U.S.C. § 2000e-2(a)(1). Plaintiff set forth the following purported causes of action against Defendants: (1) "discrimination"; (2) "violation of Plaintiff's constitutional rights"; (3) "violation of federal's [sic] affirmative action law"; (4) "racism"; (5) "Defendants are engaged in slandering"; (6) "Defendants are engaged in malice"; (7) "Defendants are engaged in harassment (targeting, infringement upon rights, egoism, arrogance, obstruction of justice, intimidation, pusedo [sic] authority, etc.)"; (8) "systematic approach (indirect but clear thru long term performance approach) to push certain kind of people (educated, people who exercise rights, ask questions, diversity with diverse background, etc.) out of community based on personal disliking, gains, etc."; (9) "Defendants are engaged in perjury"; (10) "inefficiency leading personal gains at citizens' cost"; (11) "bullying"; and (12) "requirement is 'one of them.'"[34] The court will construe (1), (2), (3), (4), (7), and (11) above as claims for employment discrimination under Title VII and will address the remaining causes of action in part II.D below.

A plaintiff bringing a Title VII discrimination claim may prove intentional discrimination by direct or circumstantial evidence. *See Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008). In cases "[w]here, as here, an [individual's] . . . discrimination claim relies exclusively on circumstantial, rather than direct, evidence, [the court] appl[ies] the burden-

---

[34] Docket no. 119 at 6-12.

10

shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 [(1973)]."

*Timmerman v. United States Bank N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

Under the *McDonnell Douglas* analysis, a plaintiff "'bears the initial burden of setting

forth a prima facie case of discrimination.'" *Sanders*, 544 F.3d at 1105 (quoting *Sanchez v.*

*Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998)). "After the plaintiff makes a prima facie

case, the burden shifts to the employer to give a legitimate, nondiscriminatory reason for its

employment decision." *Id.* "If the employer comes forward with a nondiscriminatory reason for

its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of

material fact as to whether the employer's proffered reason for the challenged action is

pretextual–i.e., unworthy of belief." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

A successful showing of pretext "enables a plaintiff to survive summary judgment."

*Timmerman*, 483 F.3d at 1113. But a plaintiff must prove both his prima facie case and pretext

by a preponderance of the evidence. *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307

(10th Cir. 2005) (en banc) (per curiam) (pretext); *Horizon*, 220 F.3d at 1191 (prima facie case).

The court will now determine whether Plaintiff's amended complaint establishes a prima facie

case of employment discrimination.

**(1)  Plaintiff's Prima Facie Case**

Under Title VII, to demonstrate a prima facie case of disparate treatment in the failure to

hire context, Plaintiff must demonstrate that (1) he "belongs to a protected class;" (2) he "applied

and was qualified for a job for which the employer was seeking applicants;" (3) "despite being

qualified, [he] was rejected;" and (4) after he was rejected, "the position remained open and the

employer continued to seek applicants from persons of [Plaintiff's] qualifications." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005) (quotations and citation omitted).  Plaintiff has clearly satisfied the first and third prongs of the prima facie case, and Defendants do not dispute that.  Defendants, however, argue that Plaintiff has failed to satisfy the second and fourth prongs of the prima facie test.

The court agrees and concludes that Plaintiff has not demonstrated that he was qualified for the position or that the position remained open and Defendants continued to seek applications after Plaintiff was rejected.  First, Plaintiff has not shown that he possesses one of the requirements for the position, namely to work well with the public, governmental entities, and/or diverse personalities.  As described by Defendants, Plaintiff publically accused the City and its employees of embezzlement, bribery, and general dishonesty, and he had various disputes with other local business owners and entities, all prior to filing this action.  Rather than attempting to demonstrate that he does work well with others, Plaintiff argues that Defendants hold their "position without any details, merit, validity, evidence, back up," and that "[t]his is slandering (felony?)."[35]  Plaintiff contends that during these alleged disputes, he "never yelled, screamed, point gun, own gun" and that he merely "engaged in accessing public records, inquiring, asking when policy, enforcement, etc; reflected double standard, exercised rights, etc."[36]  In addition,

---

[35] Docket no. 156 at 12.

[36] Docket no. 119 at 28-29.

Plaintiff's cover letter for the 2004 position states that working well with diverse personalities "is rarely available in this rural, remote, highly underexposed area which I have."[37]

Furthermore, while Plaintiff is a local motel owner and has experience running a small business, his resume does not demonstrate experience running a public entity or public program, nor has Plaintiff established that he is qualified to do so.  Although Plaintiff is highly educated with masters degrees in Plastics Engineering and Organic Chemistry, his employment experience includes working for companies that produce flooring products, paint, and automotive refinishing products.  In his cover letter for the position, Plaintiff indicates that he has experience in historic preservation because he "turned boarded up (>10 years) eye shore [sic] historic property into cash cow for local governments.  When [he] first moved in this community, there were people who said that Marianna Inn was bulldoseable [sic].  Now after 10 years, people love to drive in and look around."[38]  Based on the foregoing, the court concludes that Plaintiff has not demonstrated that he was qualified for the Main Street Manager position and has thus failed to establish the second prong of a prima facie case.

Second, Plaintiff has not shown that the position remained open and Main Street continued to seek applicants after Defendant was rejected.  The undisputed facts demonstrate that in both 2003 and 2004, the Main Street Manager position was filled by qualified applicants who were members of the same applicant pool as Plaintiff.  In addition, there were other applicants

---

[37] Docket no. 154, Exhibit D, at 1.

[38] *Id.*

who were also rejected for both positions (and one both times as well), and Plaintiff has failed to provide any evidence to demonstrate that he was treated any differently than those applicants. Thus, the court concludes that because Plaintiff has not satisfied the second and fourth prongs, he has failed to demonstrate a prima facie case of disparate treatment.

### (2)  Defendants' Legitimate, Non-Discriminatory Reasons

Even assuming arguendo that Plaintiff has set forth a prima facie case of discrimination, Defendants have enumerated legitimate, non-discriminatory reasons for failing to hire him. Specifically, Defendants assert that they did not hire him because they believed that Mr. Luca and Ms. Johnson were more qualified for the position.  Defendants also contend that, based on Plaintiff's past disputes with various individuals and institutions in the community, they believed Plaintiff could not work closely or be collegial with City officials and employees, other governmental entities, local business owners, and/or the public.  And, "[i]t is the manager's perception of the [applicant's] performance that is relevant, not [P]laintiff's subjective evaluation of his own relative performance."  *Jones v. Denver Post Corp.*, 203 F.3d 748, 754 (10th Cir. 2000) (quotations and citations omitted); *see also Lucero v. Sandia Corp.*, No. 11-2028, 2012 WL 3667449, at *5 (10th Cir. August 28, 2012) (unpublished).  The court further notes that the Tenth Circuit has previously held that an individual's "ability to work well with others, particularly with management, is a legitimate, non-discriminatory qualification" for employment. *Trujillo v. Huerfano County Bd. of County Com'rs*, 349 Fed. Appx. 355, 364 (10th Cir. 2009); *see also Fye v. Okla. Corp. Com'n*, 516 F.3d 1217, 1228 (10th Cir. 2008).

14

The court concludes that Defendants have offered a legitimate, non-discriminatory basis for failing to hire Plaintiff.  Accordingly, the burden shifts back to Plaintiff to demonstrate that the proffered reasons were merely pretextual.

**(3)  Plaintiff's Evidence of Pretext**

Pretext may be shown by "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (quotations and citation omitted).  However, Plaintiff's "'mere conjecture'" that the explanation for failing to hire him "'is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'"  *Santana v. City & County of Denver*, 488 F.3d 860, 864-65 (10th Cir. 2007) (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).

Plaintiff has failed to produce sufficient evidence to demonstrate a genuine issue of material fact concerning whether the proffered explanations for failing to hire him are "unworthy of belief."  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).  Plaintiff points to the fact that both Mr. Luca and Ms. Johnson left the position after a year or less as evidence that Defendants proffered explanations for failing to hire him are dubious.  However, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."  *Rivera v. City &*

15

*County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (quotations, citation, and brackets

omitted).  As aptly noted by the Tenth Circuit,

> That individuals and companies sometimes make
> employment decisions that prove to be bad ones in hindsight
> usually suggests no more than that–that they got it wrong.  To
> support an inference of pretext, to suggest that something more
> nefarious might be at play, a plaintiff must produce evidence that
> the employer did more than get it wrong.  He or she must come
> forward with evidence that the employer didn't really believe its
> proffered reasons for action and thus may have been pursuing a
> hidden discriminatory agenda.
>
> Toward this end, to suggest that an employer's claim that it
> hired someone else because of superior qualifications is pretext for
> discrimination rather than an honestly (even if mistakenly) held
> belief, a plaintiff must come forward with facts showing an
> "overwhelming" "disparity in qualifications."

*Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (quoting *Jaramillo*, 427

F.3d at 1309 (other quotations and citations omitted)).

Plaintiff also argues that Defendants have not set forth with specificity the instances

where Plaintiff was difficult to work with and, as such, this proffered reason is merely a pretext

for discrimination.  However, by Plaintiff's own pleadings, he repeatedly demonstrates his

contentious attitude toward members of the community.  As an example, in his original

complaint, he accuses several members of the hiring committee of failing to pay their taxes and

notes that he "had to expose" their wrongdoing.[39]  He also questions their fitness to serve as

board members of various local institutions.  In addition, one of Plaintiff's attachments to his

---

[39] Docket no. 3 at 4-5.

16

original complaint contains three applications for membership in various local institutions all dated October 2002. In those applications, he repeatedly insults various people and institutions in the community, including those institutions for which he is applying, suggesting that they are all racist, biased, corrupt, inefficient, and in one instance, "in need of [a] psychiatric evaluation."[40] Thus, Plaintiff has failed to demonstrate that Defendants' refusal to hire him based on his inability to work well with members of the community was a pretext for discrimination.

In addition, Plaintiff also asserts that Defendants' explanations were pretextual because one of the members of the Main Street board who served on the hiring committee also owned a motel in the City and competed for business with Plaintiff. Plaintiff contends that this board member must have been racist and biased against him because she disapproved of Plaintiff displaying the nightly room rates for his motel. Plaintiff also contends that this board member was offended by Plaintiff's telling her that she was keeping Main Street as a "local white women's club" and that she obviously believed that a "21st century Nigger got no right to put nail in head of local white."[41] Plaintiff states that because everyone in Panguitch knows that he has brown skin, he is Hindu, he is an immigrant, and he is male, the hiring committee must have taken those characteristics into account when they rejected him for the position. Plaintiff, however, "has no evidence to show pretext, other than [his] own subjective belief, which is not sufficient to withstand a motion for summary judgment." *Pumphrey v. Lifescan Inc.*, No.

---

[40] *Id.*, Exhibit B-1.

[41] Docket no. 156 at 5.

2:05CV851DAK, 2010 WL 417414, at *11 (D. Utah Jan. 29, 2010), *see also Schultz v. Gen.*

*Elec. Capital Corp.*, 37 F.3d 329, 334 (7th Cir. 1994) (noting that "self-serving remarks standing

alone are insufficient to raise doubt as to the credence of [the employer's] explanation").

Based on the foregoing, this court concludes that Plaintiff has failed to (1) demonstrate a

prima facie case of failure to hire and (2) show that genuine issues of material fact exist as to

whether Defendants' legitimate non-discriminatory reasons for failing to hire him were merely a

pretext for discrimination.  Accordingly, Defendants' motion for summary judgment is

**GRANTED** on the following causes of action alleged by Plaintiff: "discrimination[;] . . .

violation of Plaintiff's constitutional rights[;] . . . violation of federal's [sic] affirmative action

law[;] . . . racism[;] . . . Defendants are engaged in harassment (targeting, infringement upon

rights, egoism, arrogance, obstruction of justice, intimidation, pusedo [sic] authority, etc.)[;] . . .

[and] (11) "bullying."[42]

### D.  Plaintiff's Remaining Causes of Action

In the remaining six purported causes of action, Plaintiff has set forth claims all relating

to his belief that Defendants, as well as the entire community, are conspiring against him.

Defendants urge the court to dismiss the remaining causes of action for failure to state a claim

under rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(6).  "To

survive a motion to dismiss under rule 12(b)(6), "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

---

[42] Docket no. 119 at 6-12.

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and, as such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Only the following three claims remotely state a recognized cause of action: "Defendants are engaged in slandering," "Defendants are engaged in malice," and "Defendants are engaged in perjury."[43] The court will address the slander and malice claims together and the perjury claim separately.

**(1) Slander and Malice**

Plaintiff argues that Defendants engaged in slander by stating in their written response to his discovery requests that because Plaintiff "was well known for his disputes with various institutions and individuals in the community, [he] . . . would not be able to successfully manage the organization."[44] Under Utah law, slander is defined as "any libel communicated by spoken words." Utah Code Ann. § 45-2-2(2). And libel is defined as "a malicious defamation, expressed either by printing or by signs or pictures or the like, . . . to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of [an individual], and thereby to

---

[43] *Id.*

[44] *Id.* at 6.

19

expose him to public hatred, contempt or ridicule."  Utah Code Ann. § 45-2-2(1).  Because Plaintiff contends that Defendants' written discovery response constitutes slander, and "[s]lander and libel are a subset of defamation," *Jensen v. Sawyers*, 130 P.3d 325, 333 n.6 (Utah 2005), the court will construe his slander claim, as well as his claim for malice,[45] as one cause of action for defamation.

"To state a claim for defamation, [Plaintiff] must show that [D]efendants published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007-1008 (Utah 1994).  Plaintiff has failed to state a claim for defamation because he has not shown that the statements were not subject to a privilege.  "To establish the judicial proceeding privilege, the statements must be (1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Krouse v. Bower*, 20 P.3d 895, 898 (Utah 2001) (quotations and citations omitted); *see also Pratt v. Nelson*, 164 P.3d 366, 376 (Utah 2007).  Because Defendants' statements were made during the course of a judicial proceeding in

---

[45] Under his malice claim, Plaintiff does not set forth any specific actions taken by Defendants.  Instead, he cites to, and quotes from, two cases involving defamation claims but he fails to demonstrate how these cases apply to the facts of his case.  In addition, the court notes that there is not a separate, recognized cause of action for malice–it is generally an element of some other cause of a action, like defamation or libel.  However, for purposes of this analysis, the court construes both causes of action as one for defamation.

response to Plaintiff's discovery requests, Defendants have absolute immunity from a claim of libel and Plaintiff's claims fail as a matter of law.

### (2)  Perjury

Plaintiff appears to assert that because Main Street argued during the administrative proceedings that it was not an alter ego of the City nor an employer under applicable Utah law, Defendants engaged in perjury.  While criminal liability exists for perjury, Utah does not recognize civil perjury as a private right of action.  *See Cline v. State, Div. of Child & Family Servs.*, 142 P.3d 127, 136-37 (Utah Ct. App. 2005) ("When a statute makes certain acts unlawful and provides criminal penalties for such acts, but does not specifically provide for a private right of action, we generally will not create such a private right of action.").  Thus, Plaintiff's cause of action for perjury also fails to state a claim for relief as a matter of law.

### (3)  Claims for Systematic Approach, Inefficiency, and One of Them Requirement

The remaining three causes of action are enumerated as (A) "systematic approach (indirect but clear thru long term performance approach) to push certain kind of people (educated, people who exercise rights, ask questions, diversity with diverse background, etc.) out of community based on personal disliking, gains, etc."; (B) "inefficiency leading personal gains at citizens' cost"; and (C) "requirement is 'one of them.'" [46]  These claims do not set forth any specific and cognizable cause of action for which relief is available.  Accordingly, Plaintiff's

---

[46] Docket no. 119 at 6-12.

remaining claims each fail to "state a claim to relief that is plausible on its face."  *Twombly*, 550
U.S. at 570.

### III.  CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion for
summary judgment[47] is **GRANTED** and all of Plaintiff's claims are **DISMISSED** with
prejudice.  The final pretrial conference scheduled for November 14, 2012, and the three-day
bench trial scheduled to begin on November 27, 2012, are hereby **STRICKEN**.  And all
remaining pending motions[48] are rendered **MOOT**.  Because this ruling disposes of all of
Plaintiff's claims, the Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

DATED this 8th day of November, 2012.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[47] *See* docket no. 153.

[48] *See* docket nos. 139, 140, 157, 167, 169, 177, 181, and 187.

22